# COURT OF APPEALS OF TEXAS.

## AUSTIN TERM, 1881.

### HENRY HARPER *v.* THE STATE.

1. CORROBORATION OF ACCOMPLICE TESTIMONY must be effected by the evidence other than that of the accomplice himself; the facts to be corroborated must be criminative of the defendant; and the corroborative evidence must tend to connect the defendant with the offense committed.

2. EVIDENCE.— In a trial for theft the principal witness against the defendant was one B., who had been previously tried on and acquitted of the same accusation. Over the defendant's objection, the State was allowed to introduce the record of B.'s acquittal. *Held*, error.

APPEAL from the District Court of Camp. Tried below before the Hon. B. T. ESTES.

Theft of a beef steer belonging to one Minchen was the charge against the appellant, and two years confinement in the penitentiary the punishment assessed against him.

Minchen, the alleged owner of the animal in question, proved its disappearance about the time laid in the indictment, and testified that he soon afterwards found near a certain locality a skull which he recognized by its horns to be that of his missing steer. The skull had a bullet-hole in it. About the time the steer disappeared, witness heard that one Bill Bates had carried a beef to the neighboring town of Pittsburg, and sold it there. Witness went to see Bates, and information derived from him caused the witness to immediately go to see the defendant, who lived in the neighborhood. In reply to witness's inquiry the defendant denied having anything whatever

to do with the killing or taking of the beef, but stated
that · Bill Bates had come to see him the preceding night,
and tried to get him to take the killing of the beef upon
himself, which he refused to do; and the defendant as-
serted his innocence. Witness then preferred a complaint
against Bates for theft of the steer, which, without wit-
ness's consent, had been taken from its accustomed range
in Camp county.

Bill Bates was next introduced by the State. He testi-
fied that, about the time Minchen lost his steer, he, the
witness, borrowed a wagon from one Eubanks for the
purpose of hauling a load of pine to Pittsburg, for sale.
Proceeding with his load of pine, he reached a point on
the road near the place where Minchen afterwards found
the skull, and there he stopped to fix his hame-string,
which had broken. While he was thus delayed, the de-
fendant came out of the woods with a gun, and told wit-
ness he would pay him fifty cents to carry a beef to town
and sell it for him. Witness consented to do so, and
threw the pine off the wagon. Defendant led the way,
and witness followed with the wagon into the woods
about a hundred yards from the road, and there the de-
fendant showed him a beef which had been butchered
and cut up, and was lying on the hide. They loaded the
beef and hide into the bed of the wagon. Defendant put
no price on the beef, but instructed witness to sell it for
what he could get, and said he would meet witness on
the latter's return from town. This occurred about nine
o'clock in the forenoon. Witness carried the beef and
hide to Pittsburg, and there sold the hind quarters and
hide to Mr. Campbell, a butcher, who paid to witness one
dollar in cash, and agreed to pay the balance on the suc-
ceeding Saturday. Witness left with Mr. Campbell one
of the fore-quarters for sale, and sold the other to a
colored woman for fifty cents in cash. On his way home
the same evening, witness saw the defendant in the road,

and paid him the $1.50, and defendant paid fifty cents of it to witness, as they had agreed. Witness afterwards collected from Campbell the balance, and paid it to the defendant. At a subsequent day Mr. Minchen came to see witness, and got from him information as to whom he acted for in selling the beef; and that night witness went to see the defendant about the matter, and told him that Minchen had accused him, witness, and, reminding the defendant of the facts, he insisted that defendant should state them to Minchen. Defendant said that it was all right, and that he would so state to Minchen. This took place at defendant's, and there was no third person present. There was a party at defendant's that night, and it was on that occasion that witness paid over to him the balance collected from Campbell. Witness never carried any other beef to Pittsburg.

Soon after his call on the defendant, the witness ran off, or left home, and was arrested five or six miles from home by the defendant and two or three other persons, who found him squatted down in a fence-corner inside a field. He ran off because he heard that his life was threatened by the defendant and his associates, some of whom were armed when the party arrested witness.

The witness admitted that, about the time Minchen lost his steer, he went to Dr. Bates for some shot with which to kill a beef, and that Dr. Bates advised him not to kill it then; but he denied that he told Dr. Bates that he must kill the beef then because he had hired a wagon to carry it to Pittsburg, for sale.

Quincy Eubanks, for the State, corroborated Bill Bates with respect to the latter borrowing witness's wagon for the purpose of taking a load of pine to the town of Pittsburg.

W. G. Campbell, for the State, testified that he was a butcher in the town of Pittsburg about the time referred to by the preceding witnesses. He corroborated Bill

Bates with respect to the sale of the beef-meat and hide, but added that nothing was said by Bates to indicate that he was selling for any other person than himself.

Over objection by the defense, the State was permitted to introduce as evidence the record of a judgment of the District Court of Camp county acquitting Bill Bates of the theft of the same steer as that involved in the present case. The defense reserved exceptions to the admission of this proof.

Peter Hill, for the defense, testified that soon after Bill Bates had accused the defendant with the taking of Minchen's steer, witness, defendant and others went to see him about the matter. Bates denied ever stating that defendant took the animal, and said that he killed it himself.

L. Johnson, for the defense, testified to working with defendant in the latter's field the entire day on which Bill Bates went to Pittsburg with a wagon, about the time Minchen lost his steer. Witness saw Bates on his road, and observed that there were bushes in the wagon as though there was meat in it.

Caleb Norton, for the defense, testified that he saw Bill Bates carrying beef from a wagon into the market-house in Pittsburg about the time in question. Witness asked Bill Bates whose beef that was, and the latter replied that it was his own.

Dr. J. K. Bates, for the defense, testified that, about the date referred to by previous witnesses, Bill Bates came to him to get some shot with which to kill a beef. Witness, offering to let Bill Bates have some bacon, advised him not to kill the beef at that time, as the weather was too warm. Bill replied that he wanted to kill one and take it to Pittsburg, and sell it.

No brief for the appellant.

*J. H. McLeary*, Attorney General, for the State.

HURT, J.   Harper, the appellant, was convicted for the theft of one beef steer, upon the evidence of one Bates alone; he, Bates, being evidently an accomplice if not the only thief in the transaction.   There is not in the whole range of the evidence the most distant suspicion raised against Harper except in the testimony of Bates.

The court below seems to have acted on the assumption that if the accomplice is corroborated upon any fact, whether tending to connect the defendant with the commission of the offense or not, this would be sufficient. For instance, the accomplice Bates testified that he had borrowed a wagon to haul pine to town; that defendant came to him and hired him to take the beef to town and sell it for him; that he carried the beef in the wagon to town and sold it.   The owner of the wagon and the person who purchased the beef were introduced, and by them the State proved that the wagon was borrowed by Bates, and that he said he wanted it to haul pine to town; and that the beef was sold in the quantities and to the person as stated by Bates.   Thus far Bates was corroborated, and no farther.   Each and every one of these facts may be true; but that either of them tends in the least degree to connect the defendant with the theft of the beef steer fails to appear.

If the accomplice testifies to a fact tending to connect the defendant with the commission of the offense, and the existence of this is sworn to by some other witness, or if a fact tending to connect the defendant with the commission of the offense is sworn to by a witness other than the accomplice, whether testified to or not by the accomplice, this would be corroborative.   The strength of the corroborative facts is not now under discussion. To return to the subject of corroboration: the facts or circumstances which are the subject of corroboration must be criminative.   They cannot be made so by other facts sworn to by the accomplice; they must be so inherently.

The accomplice may be corroborated upon any number of facts, but unless the fact or facts thus corroborated be criminative,— tend to connect the defendant with the commission of the offense,— such corroboration is spurious, worthless, and in fact no corroboration.

The evidence of the State, as well as that of the defendant, tended very strongly if not conclusively to fasten guilt upon Bates, not as an accomplice merely but as the sole guilty agent and the thief. The State, over objections of the defendant, introduced the record of the trial and acquittal of Bates upon the charge of the theft of the same beef steer. This was clearly wrong. Defendant was no party to that suit or prosecution. This evidence was simply the opinion of the jury. What evidence was before them is not shown, nor indeed would this matter. Under no rule of evidence would this be evidence under the state of case presented by the record.

For the errors above indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*